Court of Appeals No. 21-35892

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

DONALD E. MCCOY III and MAXIMILIANO OLIVERA,
individually, and on behalf of all others similarly situated,

Plaintiffs-Appellants,

vs.

WELLS FARGO BANK, N.A.,

Defendant-Appellee.

---

On Appeal from the United States District Court for the District of Oregon

---

**OPENING BRIEF OF APPELLANTS
DONALD E. MCCOY III AND MAXIMILIANO OLIVERA**

---

Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, IL 60602

Marc E. Dann
DANNLAW
15000 Madison Avenue
Lakewood, OH 44107

Jeffrey A. Long
4248 Galewood St., Suite 18
Lake Oswego, OR 97035

Attorneys for Plaintiffs-Appellants DONALD E. MCCOY III and
MAXIMILIANO OLIVERA

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ........................................................... iii

**INTRODUCTION**.............................................................................1

**JURISDICTIONAL STATEMENT**...............................................1

**ISSUE PRESENTED** .....................................................................2

**PERTINENT STATUTORY AND REGULATORY PROVISIONS**..................2

**STATEMENT OF THE CASE**........................................................2

**SUMMARY OF THE ARGUMENT** .............................................4

**STANDARD OF REVIEW** ............................................................5

**ARGUMENT** ..................................................................................5

    **I.**    **THE MAGISTRATE RELIED UPON INAPPLICABLE PRECEDENT.** ........................................................5

        **A.**   **The Scope of 12 U.S.C. § 2605 Prior to Dodd-Frank.** ...........5

        **B.**   **Dodd-Frank Amended RESPA and Empowered the CFPB to Impose Additional Duties on Servicers**.............7

            **1.**   **Borrower Inquiries Under Regulation X.** ..................10

                **a.**   **Notices of Error Pursuant to 12 C.F.R. § 1024.35.** ................................................10

                **b.**   **Requests for Information Pursuant to 12 C.F.R. § 1024.36.**............................17

                **c.**   **Ownership Inquiries Pursuant to 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1)(D).** ............21

            **2.**   **Borrower Inquiries Under Regulation Z.**...................28

                **a.**   **Payoff Requests and NOEs Pursuant to 12 C.F.R. § 1024.35(b)(6)**..............................28

i

        **b.**    **Servicer Contact Information Requests and NOEs Pursuant to 12 C.F.R. § 1024.35(b)(11)**.............................**30**

    **C.**    **The Scope of 12 C.F.R. § 1026.35(b)(11)'s "Catch-All" Provision**...................................**32**

**II.**    **PLAINTIFFS' BORROWER INQUIRIES ARE ACTIONABLE.** ............................................**36**

    **A.**    **Defendant Was Required to Respond to McCoy's Inquiry #1 and McCoy's NOE #2.** ........................**36**

    **B.**    **Defendant Was Required to Respond to McCoy's Inquiry #2 and Olivera's Inquiry #2**.....................**39**

    **C.**    **Defendant Was Required to Respond to McCoy's Inquiry #3.** ...............................................**41**

    **D.**    **Defendant Was Required to Respond to Olivera's Inquiry #1**................................................**46**

    **E.**    **Defendant Was Required to Respond to McCoy's NOE #1 and McCoy's NOE #3.** .............................**47**

    **F.**    **Defendant Was Required to Respond to McCoy's NOE #4, McCoy's NOE #5, McCoy's NOE #6, and Olivera's NOE #1.** ..........................**49**

**CONCLUSION**..................................................................**53**

**CERTIFICATE OF COMPLIANCE FOR BRIEFS** ................**55**

**CERTIFICATE OF SERVICE** ..........................................**56**

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Wells Fargo Home Mortg.*,
   2017 WL 4181114 (E.D. Cal. 2017) ...................................................................44

*Barbano v. JP Morgan Chase Bank, N.A.*,
   2019 WL 8883344 (C.D. Cal. 2019) ..................................................... 40, 42, 43

*Becker v. PennyMac Loan Services, LLC*,
   2022 WL 293344 (S.D. Ohio 2022) .................................................................8, 10

*Brothers v. Bank of Am., N.A.*,
   2012 WL 4471590 (N.D. Cal. 2012) ........................................................... 14, 32

*Christenson v. Citimortgage, Inc.*,
   2014 WL 4637119 (D. Colo. 2014) ....................................................................11

*Cole v. JPMorgan Chase Bank, N.A.*,
   2016 WL 4491731 (S.D. Ohio 2016) ..................................................................20

*Derusseau v. Bank of Am., NA.*,
   2011 WL 5975821 (S.D. Cal. 2011) ...................................................................43

*Diffely v. Nationstar Mortgage, LLC*,
   2018 WL 1737780 (W.D. Wash. 2018) .........................................................3, 21

*Diunugala v. JP Morgan Chase Bank, N.A.*,
   81 F.Supp.3d 969 (S.D. Cal. 2015) ............................................................ 28, 37

*Hock Huat Yap v. Deutsche Bank Nat'l Tr. Co.*,
   2018 WL 4095167 (D. Ariz. 2018) ......................................................................6

*Hopkins v. PHH Mortgage Corp.*,
   2019 WL 3526502 (N.D. Ga. 2019)....................................................................11

*In re Coppola*,
   596 B.R. 140 (Bankr. D.N.J. 2018) ....................................................................34

*Joussett v. Bank of Am., N.A.*,
   2016 WL 5848845 (E.D. Pa. 2016)......................................................................20

iii

*Lucero v. Cenlar FSB*,
2015 WL 5024047 (W.D. Wash. 2015) ..................................................................3

*Malifrando v. Real Time Resolutions, Inc.*,
2016 WL 6955050 (E.D. Cal. 2016) ...................................................................34

*Medina v. Wells Fargo Bank*,
2019 WL 6140481 (C.D. Cal. 2019) ...................................................................16

*Medrano v. Flagstar Bank, FSB*,
704 F.3d 661 (9th Cir. 2012) ..................................................................... passim

*Messina v. Green Tree Servicing, LLC*,
210 F.Supp.3d 992 (N.D. Ill. 2016) ............................................................ 11, 20

*Naimoli v. Ocwen Loan Servicing, LLC*,
22 F.4th 376 (2nd Cir. 2022) .......................................................... 15, 33, 34, 35

*Nguyen v. Madison Mgmt. Services, LLC*,
2016 WL 4708535 (D. Or. 2016) ........................................................................51

*Obot v. Wells Fargo Bank, N.A.*,
2011 WL 5243773 (N.D. Cal. 2011) ...................................................................23

*Pendleton v. Wells Fargo Bank, N.A.*,
993 F.Supp.2d 1150 (C.D. Cal. 2013) ................................................................40

*Pollack v. Seterus, Inc.*,
2017 WL 6343676 (S.D. Fla. 2017) ............................................................ 18, 20

*Rey v. OneWest Bank, FSB*,
2013 WL 1791910 (E.D. Cal. 2013) ...................................................................40

*Schmidt v. Wells Fargo Bank, N.A.*,
2019 WL 4943756 (D.N.J. 2019) ..........................................................................3

*Smith v. Wells Fargo Bank, N.A.*,
2019 WL 2189285 (N.D. Ill. 2019) ....................................................................51

*St. Claire v. Ditech Fin., LLC*,
2018 WL 4850127 (N.D. Ga. 2018) ............................................................ 11, 33, 34, 35

*Stand Up for California! v. U.S. Dep't of the Interior*,
959 F.3d 1154 (9th Cir. 2020) .................................................................. 15, 21, 24

*Tamburri v. Suntrust Mortg., Inc.*,
875 F.Supp.2d 1009 (N.D. Cal. 2012) ........................................................ 23, 26

*Tanasi v. CitiMortgage, Inc.*,
257 F.Supp.3d 232 (D. Conn. 2017) ..................................................................17

*United States v. Pepe*,
895 F.3d 679 (9th Cir. 2018) .................................................................. 16, 21, 24

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*,
537 U.S. 371 (2003) ............................................................................................34

*Watson v. Bank of Am., N.A.*,
2016 WL 3552061 (S.D. Cal. 2016) ............................................................ 26, 30

*Watson v. Bank of Am., N.A.*,
2016 WL 6581846 (S.D. Cal. Nov. 7, 2016) ................................... 26, 30, 39, 48

*Weiss v. Wells Fargo Bank, N.A.*,
2020 WL 469615 (N.D. Ill. 2020) ......................................................... 17, 20, 51

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) ...............................................................................5

*Yepez v. Specialized Loan Servicing, LLC*,
2019 WL 2644255 (N.D. Ill. 2019) ................................................................3, 52

### Statutes

12 U.S.C. § 2605 ....................................................................... passim

12 U.S.C. § 2617 .................................................................................7

12 U.S.C. § 5481 .................................................................................7

12 U.S.C. § 5512 .................................................................................7

15 U.S.C. § 1639g ......................................................................... 28, 36

15 U.S.C. § 1641 ...............................................................................30

v

28 U.S.C. § 1291 ............................................................................1

28 U.S.C. § 1331 ............................................................................1

### **Rules**

12 C.F.R. § 1024.1, *et seq.* ................................................... passim

Fed. R. App. P. 4 ...........................................................................2

L.R. 28-2.7 .....................................................................................2

### **Regulations**

12 C.F.R. § 1024.1 ................................................................ 2, 8, 22

12 C.F.R. § 1024.35 ............................................................... passim

12 C.F.R. § 1024.36 ............................................................... passim

12 C.F.R. § 1026.36 ........................................................... 28, 36, 37

78 Fed. Reg. 10696, *et seq.* .................................................. passim

## **INTRODUCTION**

This matter arises from the District Court's dismissal of Plaintiffs-Appellants DONALD E. MCCOY III ("McCoy") and MAXIMILIANO OLIVERA ("Olivera") (collectively, "Plaintiffs") First Amended Complaint ("Complaint") against Defendant-Appellee WELLS FARGO BANK N.A. ("Defendant"). In the Complaint, Plaintiffs allege that Defendant violated 12 U.S.C. § 2605(e) and (k)(1) of the Real Estate Real Estate Settlement Procedures Act ("RESPA") in failing to respond to various types of borrower inquiries that Plaintiffs submitted to Defendant regarding their mortgage loans. ER-008-011. In his Findings and Recommendation ("Recommendation of Dismissal"), the Magistrate Judge ("Magistrate") recommended dismissal of this matter, holding that none of Plaintiffs' inquiries related to servicing, and thus, Defendant was not required to respond to them. ER-016-018. For the reasons set forth herein, that determination was in error and should be reversed.

## **JURISDICTIONAL STATEMENT**

This is an appeal as a matter of right from the United States District Court for the District of Oregon. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, in that the claims arose under federal law, namely RESPA. This appeal is from a final order that disposes of all parties' claims. As such, this Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

1

The Magistrate's Recommendation of Dismissal was entered on July 21, 2021. ER-015-019. The District Court overruled Plaintiffs' objections to the Recommendation of Dismissal (ER-004) and entered final judgment in favor of Defendant on September 28, 2021(ER-003). On October 15, 2021, Plaintiffs timely filed their Notice of Appeal. ER-140-143; Fed. R. App. P. 4(a)(1)(A).

## ISSUE PRESENTED

1.    Whether Borrower Inquiries (defined *infra*) governed by 12 U.S.C. § 2605(k)(1) and Regulation X (defined *infra*) must relate to "servicing," as that term is defined by 12 U.S.C. § 2605(i)(3), in order to trigger a mortgage loan servicer's ("Servicer") duty to respond to them.

## PERTINENT STATUTORY AND REGULATORY PROVISIONS

Pursuant to L.R. 28-2.7, the pertinent statutory and regulatory provisions are set forth in an addendum to this brief.

## STATEMENT OF THE CASE

Plaintiffs allege that Defendant violated RESPA and the regulations promulgated pursuant thereto—known as "Regulation X" and codified as 12 C.F.R. § 1024.1, *et seq.*—when it failed to properly respond to Plaintiffs' correspondence seeking information regarding, and/or asserting errors related to, their mortgage loan accounts ("Borrower Inquiries"). ER-008-011. Specifically, in response to Borrower Inquiries submitted by Plaintiffs, Defendant sent Plaintiffs form letters stating that it would not be providing a substantive response because their mortgage

2

loan accounts were in "active litigation" and "the issues raised are the same or very closely related to the issues raised in the pending litigation" (the "Active Litigation Letters"). ER-029-037, ER-082, ER-133. While Regulation X provides certain exceptions to a Servicer's duty to respond to Borrower Inquiries—such as where a Borrower Inquiry is duplicative, vague, or seeks confidential or proprietary information—the pendency of "active litigation" is *not* one of the enumerated exceptions. *See*, 12 C.F.R. § 1024.36(f)(1); 12 C.F.R. § 1024.35(g)(1). As such, Defendant was required, but failed, to adequately respond to Plaintiffs' Borrower Inquiries in compliance with RESPA and Regulation X.[1]

On July 21, 2021, after considering Defendant's motion to dismiss, the Magistrate issued his Recommendation of Dismissal. ER-015-019. The District Court overruled Plaintiffs' objections to the Recommendation of Dismissal, and

---

[1] Since the Magistrate held that Defendant had no duty to respond to Plaintiffs' Borrower Inquiries, he did not need to reach the issue of whether Defendant's Active Litigation Letters were sufficient to discharge that duty. As such, that issue is outside the scope of this appeal. Nevertheless, Plaintiffs will briefly note that the Active Litigation Letters were insufficient because neither RESPA nor Regulation X "express that litigation extinguishes a servicer's duty to respond to a" Borrower Inquiry. *See, e.g.*, *Diffely v. Nationstar Mortgage, LLC*, 2018 WL 1737780, at *8 (W.D. Wash. 2018); *Schmidt v. Wells Fargo Bank, N.A.*, 2019 WL 4943756, at *2 (D.N.J. 2019); *Lucero v. Cenlar FSB*, 2015 WL 5024047, at *2 (W.D. Wash. 2015); *see also*, Section II-C, *infra* (discussing 12 C.F.R. § 1024.36(f); 12 C.F.R. § 1024.35(g); 78 Fed. Reg. 10751, 10761); *Yepez v. Specialized Loan Servicing, LLC*, 2019 WL 2644255, at *3 (N.D. Ill. 2019).

3

entered final judgment in favor of Defendant on September 28, 2021. ER-003-004. This appeal followed.

### SUMMARY OF THE ARGUMENT

The Magistrate's Recommendation of Dismissal was based on the conclusion that Plaintiffs' Borrower Inquiries were required to strictly relate to "servicing," as that term is defined by 12 U.S.C. § 2605(i)(3), in order to trigger Defendant's duty to respond. While it is true that a certain type of Borrower Inquiry—namely, a "qualified written request" ("QWR"), as defined by 12 U.S.C. § 2605(e)(1)(B)—must relate to servicing in order to necessitate a Servicer's response, Plaintiffs' Borrower Inquiries were not (exclusively) QWRs. Instead, as explained below, Plaintiffs' Borrower Inquiries, in addition to or instead of being QWRs, were RFIs, NOEs, Ownership Inquiries, Payoff Requests, and Servicer Contact Information Requests,[2] which are governed by an entirely different provision of RESPA (12 U.S.C. § 2605(k)(1)),[3] and are not required to relate to servicing in the same way as QWRs, submitted pursuant to 12 U.S.C. § 2605(e), in order to trigger the requirement that a Servicer respond to them.

---

[2] All of these terms are defined *infra*.

[3] The provisions of 12 U.S.C. § 2605(k)(1) were added to RESPA as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank")—Public Law No. 111-203, 124 Stat. 1376 (2010).

Nevertheless, the Magistrate—and, by extension, the District Court—applied the standards applicable to QWRs submitted pursuant to 12 U.S.C. § 2605(e) to all of Plaintiffs' Borrower Inquiries. For the reasons set forth below, this was in error, and the District Court's dismissal of this case should be reversed.

## STANDARD OF REVIEW

"A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*." *Williams v. Gerber Products Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

## ARGUMENT

### I. THE MAGISTRATE RELIED UPON INAPPLICABLE PRECEDENT.

#### A. The Scope of 12 U.S.C. § 2605 Prior to Dodd-Frank.

RESPA permits borrowers to submit QWRs to Servicers seeking information and/or asserting errors regarding their mortgage loan accounts. 12 U.S.C. § 2605(e)(1)(B) (defining QWRs). With respect to QWRs "relating to the servicing of [a] loan," 12 U.S.C. § 2605(e)(2) requires a Servicer to, *inter alia*, correct the error asserted, provide the borrower with "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the Servicer," or furnish the borrower with the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the Servicer." A Servicer's failure to respond to a QWR relating to the servicing of a loan in violation of 12 U.S.C. § 2605(e)(2) is enforceable through 12

5

U.S.C. § 2605(f), which gives a private right of action in connection with a Servicer's "fail[ure] to comply with any provision of this section."

Importantly, written correspondence from a borrower which requests information from a Servicer or asserts an error made by the Servicer is a QWR *regardless* of whether the information requested or error asserted relates to "servicing," as that term is defined by 12 U.S.C. § 2605(i)(3). *E.g.*, 12 U.S.C. § 2605(e)(1)(B); *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012); *Hock Huat Yap v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 4095167, at *3 (D. Ariz. 2018). Nevertheless, a QWR must relate to the servicing of a loan in order to trigger a Servicer's *obligation to respond* in accordance with 12 U.S.C. § 2605(e)(2). *E.g.*, *Medrano*, 704 F.3d at 666, n. 4.

Since, at the time *Medrano* was decided—*i.e.*, prior to the enactment of Dodd-Frank—12 U.S.C. § 2605(e)(2) was the *only* provision of RESPA that imposed duties on Servicers with respect to responding to Borrower Inquiries, this distinction was purely academic. Moreover, because those duties only applied with respect to a specific type of Borrower Inquiry—namely, QWRs "relating to the servicing" of a loan—Servicers' duties to respond to inquiries from borrowers regarding their loans were rather limited. But, as more fully explained *infra*, such is no longer the case, as Dodd-Frank *expanded* the scope of Servicers' duties under RESPA beyond those that existed at the time *Medrano* was decided; Servicers are *now* required to

6

respond to other types of Borrower Inquiries even if they do not strictly relate to servicing.

Plaintiffs' claims in this case are premised upon Defendant's violation of the *new, additional* duties imposed by Dodd-Frank and Regulation X, which are *independent* of the duties imposed by 12 U.S.C. § 2605(e). Accordingly, *Medrano*—which did not address the scope of Servicers' duties under the provisions of RESPA and Regulation X at issue here because *Medrano* was decided prior to those regulations becoming effective—is not controlling as to the scope of Defendant's duties in this case.[4]

### B. Dodd-Frank Amended RESPA and Empowered the CFPB to Impose Additional Duties on Servicers.

Through Dodd-Frank, Congress amended RESPA in several key respects, including by adding the provisions of 12 U.S.C. § 2605(k)(1). Dodd-Frank also created the Consumer Financial Protection Bureau ("CFPB"), which is responsible for interpreting, and promulgating rules to effectuate, "federal consumer financial law" such as RESPA and the Truth in Lending Act ("TILA")—codified as 12 U.S.C. §§ 1601, *et seq.* 12 U.S.C. § 5512; 12 U.S.C. § 2617(a); 12 U.S.C. § 5481(12) and (14). Pursuant to that authority, the CFPB promulgated, *inter alia*, a comprehensive

---

[4] To be clear, Plaintiffs are not arguing that *Medrano* was wrongly decided. Instead, Plaintiffs' argument is that *Medrano*—a decision regarding 12 U.S.C. § 2605(e)—has no bearing on the scope of Servicers' duties under 12 U.S.C. § 2605(k)(1) and Regulation X, which took effect after *Medrano* was decided.

set of regulations known as "Regulation X," which was "issued by the [CFPB] to implement [RESPA]." 12 C.F.R. § 1024.1. As more fully explained *infra*, the amendments to RESPA effectuated by Dodd-Frank and, *inter alia*, Regulation X, expanded Servicers' duties under RESPA beyond those imposed by 12 U.S.C. § 2605(e) when *Medrano* was decided.

Although 12 U.S.C. § 2605(e) remains in force, it is no longer the *only* provision of RESPA upon which liability under 12 U.S.C. § 2605(f) can be premised in connection with a Servicer's failure to respond to a Borrower Inquiry. For example, since 12 U.S.C. § 2605(f) "creates a private right of action for violations of 'this section'" (*i.e.*, 12 U.S.C. § 2605), a violation of 12 U.S.C. § 2605(k)(1) is an enforceable violation of RESPA. *E.g.*, *Becker v. PennyMac Loan Services, LLC*, 2022 WL 293344, at \*5 (S.D. Ohio 2022). In addition, because 12 U.S.C. § 2605(k)(1)(E) requires Servicers to comply with any obligation imposed by CFPB regulation to carry out RESPA, violations of Regulation X are, in turn, violations of 12 U.S.C. § 2605(k)(1)(E) and can also be enforced through 12 U.S.C. § 2605(f). *See, e.g.*, *Becker*, 2022 WL 293344 at \*5 (noting that Regulation X imposes obligations within the purview of 12 U.S.C. § 2605(k)(1)(E)); 78 Fed. Reg. 10778 ("Rules issued under section 6 of RESPA, including under sections 6(k)(1) and 6(j)(3), are enforceable through private rights of action.").

Moreover, because the provisions of 12 U.S.C. § 2605(k)(1) and Regulation X are impose duties that stand *in addition to* those imposed by 12 U.S.C. § 2605(e), a Servicer's conduct can violate the provisions of 12 U.S.C. § 2605(k)(1) even if that conduct does not violate 12 U.S.C. § 2605(e). For example, although 12 U.S.C. § 2605(e)(2) requires Servicers to respond to QWRs that relate to servicing, it does not prohibit Servicers from charging a fee to do so. Instead, that prohibition is imposed by 12 U.S.C. § 2605(k)(1)(B), which makes it a violation of RESPA to "charge fees for responding to valid [QWRs]." As such, a Servicer that responds to QWRs that relate to servicing, but charges a fee in connection therewith, would be in violation of 12 U.S.C. § 2605(k)(1)(B) despite fulfilling its duties under 12 U.S.C. § 2605(e)(2).

Servicers can also violate 12 U.S.C. § 2605(k)(1)(E) (and potentially other provisions of 12 U.S.C. § 2605(k)(1)) even where QWRs related to servicing are not involved. This is because, as explained below, 12 U.S.C. § 2605(k)(1) and Regulation X impose duties on Servicers to respond to other types of Borrower Inquiries *beyond* just QWRs related to servicing.

In sum, the duties imposed by the amendments to RESPA effectuated by Dodd-Frank, and the CFPB's regulations promulgated pursuant thereto (*e.g.*, Regulation X), stand *in addition to* the duties imposed by 12 U.S.C. § 2605(e) and are independently enforceable through 12 U.S.C. § 2605(f). *E.g.*, *Becker*, 2022 WL

9

293344 at *5; 78 Fed. Reg. 10778. Therefore, a Servicer can be held liable for a violation of 12 U.S.C. § 2605(k)(1) and Regulation X even in the absence of a violation of 12 U.S.C. § 2605(e).

### 1.      Borrower Inquiries Under Regulation X.

One specific way in which 12 U.S.C. § 2605(k)(1) and Regulation X expand Servicers' duties is by creating two new categories of Borrower Inquiries to which Servicers are required to respond—Notices of Error ("NOEs") and Requests for Information ("RFIs")—pursuant to 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36, respectively. As explained below, *unlike* QWRs submitted pursuant to 12 U.S.C. § 2605(e)—which must relate to servicing in order to trigger a Servicer's duty to respond (*E.g.*, *Medrano*, 704 F.3d at 666)—Regulation X requires Servicers to respond to NOEs and RFIs from borrowers even if they do not strictly relate to servicing.

### a.      Notices of Error Pursuant to 12 C.F.R. § 1024.35.

An NOE is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). 12 C.F.R. § 1024.35 "implements Section 6(k)(1)(C) of RESPA," and was promulgated pursuant to the CFPB's authority under, *inter alia*, 12 U.S.C. § 2605(k)(1)(E). 78 Fed. Reg. 10737. As such, a

violation of 12 C.F.R. § 1024.35 is a violation of 12 U.S.C. § 2605(k)(1)(C) and (E), and is enforceable through those provisions of RESPA.

For the reasons set forth below, although a QWR must relate to servicing in order to trigger a Servicer's duty to respond under 12 U.S.C. § 2605(e), NOEs are *not* required to relate to servicing in the same way in order to trigger a Servicer's duty to respond under 12 C.F.R. § 1024.35(e).

First, 12 C.F.R. § 1024.35 implements 12 U.S.C. § 2605(k)(1)(C), which requires a Servicer "to take timely action to respond to a borrower's requests to correct errors relating to…other standard servicer's duties." As courts around the country have noted, 12 U.S.C. § 2605(k)(1)(C)'s use of the phrase "other standard servicer's duties" imposes a *broader* duty upon Servicers than merely responding to QWRs that relate to servicing errors. *St. Claire v. Ditech Fin., LLC*, 2018 WL 4850127, at *5-6 (N.D. Ga. 2018); *Christenson v. Citimortgage, Inc.*, 2014 WL 4637119, at *3 (D. Colo. 2014) (comparing 12 U.S.C. § 2605(k)(1)(C) with 12 U.S.C. § 2605(e), and noting that 12 C.F.R. § 1024.35 "derives from a different part of RESPA, which mandates that servicers provide responses to much broader and varied types of requests"); *Hopkins v. PHH Mortgage Corp.*, 2019 WL 3526502, at *10 (N.D. Ga. 2019); *Messina v. Green Tree Servicing, LLC*, 210 F.Supp.3d 992, 1007 (N.D. Ill. 2016).

11

Second, in the CFPB's official commentary to Regulation X ("Regulation X Commentary")—which begins at 78 Fed. Reg. 10696—the CFPB states that 12 C.F.R. § 1024.35 "implements section 6(k)(1)(C) of RESPA, and *to the extent [that 12 C.F.R. § 1024.35's] requirements are also applicable* to qualified written requests, sections 6(e) and 6(k)(1)(B) of RESPA." 78 Fed. Reg. 10737 (emphasis added). This phrasing indicates that—although, in some instances, Servicers' duties under 12 U.S.C. § 2605(k)(1)(C) and 12 U.S.C. § 2605(e) may be coextensive—Servicers' duties under 12 U.S.C. § 2605(k)(1)(C) may be triggered even where no duty under 12 U.S.C. § 2605(e) exists. *Id*. (noting that 12 C.F.R. § 1024.35 "*dispensed with technicalities about whether an [NOE] constituted a valid [QWR]*") (emphasis added). In fact, the Regulation X Commentary expressly states that Servicers' duties in responding to QWRs that relate to servicing are "subsum[ed]…in the new regime established and authorized by[] Dodd-Frank[] for [NOEs] and [RFIs] more generally," and that "the error resolution and information request requirements in §§ 1024.35 and 1024.36 apply as set forth in those sections *irrespective of whether the servicer receives a qualified written request*." 78 Fed. Reg. 10736, 10888 (emphasis added). As such, the Regulation X Commentary makes clear that Servicers' duties under 12 U.S.C. § 2605(k)(1)(C)—and, by extension, 12 C.F.R. § 1024.35—include, but are still *broader*, than Servicers' duties under 12 U.S.C. § 2605(e). 78 Fed. Reg. 10736.

12

The Regulation X Commentary also explains the difference between the act of "servicing" (as defined in 12 U.S.C. § 2605(i)(3)) and the scope of "standard servicer's duties" (as used in 12 U.S.C. § 2605(k)(1)(C)), as follows:

> The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. ***Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA,*** but also those duties that are defined as "servicing" by RESPA, as implemented by this rule, ***as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan***. ***These standard servicer duties are not limited to duties that constitute "servicing," as defined in this rule***...

78 Fed. Reg. 10739 (emphasis added).

Since the scope of "standard servicer's duties" (as used in 12 U.S.C. § 2605(k)(1)(C)) goes *beyond* 12 U.S.C. § 2605(i)(3)'s narrow definition of "servicing," an NOE can relate to "standard servicer's duties" even if it does not relate to "servicing." In turn, this means that Servicers' duties under 12 U.S.C. § 2605(k)(1)(C)—and, by extension, 12 C.F.R. § 1024.35—can be triggered in a *broader* range of circumstances than Servicers' duties under 12 U.S.C. § 2605(e)—which are only triggered when a QWR relates to "servicing," as that term is narrowly defined by 12 U.S.C. § 2605(i)(3). Therefore, 12 U.S.C. § 2605(k)(1)(C) and 12 C.F.R. § 1024.35 impose requirements upon Servicers that are *in addition to*, and *independent of*, the requirements imposed by 12 U.S.C. § 2605(e).

13

Third, 12 U.S.C. § 2605(k)(1)(C)'s and 12 C.F.R. § 1024.35's broader scope is also evidenced by the fact that several of the specifically articulated errors that may be raised through NOEs concern errors that clearly do not fall within 12 U.S.C. § 2605(i)(3)'s narrow definition of servicing. For example, pre-Dodd-Frank case law holds that QWRs sent after a loan is in default and a foreclosure has commenced do not relate to servicing because "the 'servicing' of [the] loan [is] no longer an issue" at that point. *See, e.g.*, *Brothers v. Bank of Am., N.A.*, 2012 WL 4471590, at *3 (N.D. Cal. 2012). Therefore, based on these authorities, a Servicer has no obligation under 12 U.S.C. § 2605(e) to respond to a QWR asserting that the Servicer improperly commenced foreclosure proceedings because such a QWR would not relate to "servicing"—as that term is defined by 12 U.S.C. § 2605(i)(3).

Yet, 12 C.F.R. § 1024.35(b)(9) expressly permits a borrower to submit an NOE when a Servicer improperly commences foreclosure proceedings against his property, and *requires* Servicers to respond to those NOEs. This is but one example of a situation where a Servicer can have a duty to respond to an NOE under 12 C.F.R. § 1024.35—and, by extension, 12 U.S.C. § 2605(k)(1)(C)—despite not having any duty to respond pursuant to 12 U.S.C. § 2605(e), demonstrating that Servicers' duties to respond to NOEs in accordance with 12 C.F.R. § 1024.35 and 12 U.S.C. § 2605(k)(1)(C) stand *in addition to*, and are *independent* of, Servicers' duties to respond to QWRs in accordance with 12 U.S.C. § 2605(e).

14

Finally, if 12 U.S.C. § 2605(k)(1)(C) and 12 C.F.R. § 1024.35 were read in a manner that required all NOEs to meet 12 U.S.C. § 2605(e)'s strict "related to servicing" requirement, then there would be no distinction between NOEs and QWRs asserting errors related to servicing, thus rendering NOEs superfluous. However, prior to the passage of Dodd-Frank and the implementation of Regulation X, "Servicers were *already* required to respond to "[QWRs]…relating to the servicing" of a borrower's loan, which included claims by the borrower that his account "is in error." *See*, CFPB *amicus curiae* brief filed in *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376 (2nd Cir. 2022) ("CFPB Amicus Brief"), *Naimoli* Dkt. # 126, p. 25 (quoting 12 U.S.C. § 2605(e)). As such, if 12 U.S.C. § 2605(e)'s strict "relating to servicing" requirement was applicable to NOEs, then Servicers' current duties under RESPA would be the same as they were before the passage of Dodd-Frank and the implementation of Regulation X, rendering the amendments to RESPA effectuated by Dodd-Frank and implemented by Regulation X entirely meaningless. *See*, CFPB Amicus Brief, p. 25.

Such a construction would violate the well-settled principles of statutory interpretation that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void, or insignificant" (*E.g.*, *Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154, 1159 (9th Cir. 2020)), and that "when Congress acts to amend a statute, [a court is to]

15

presume it intends its amendment to have real and substantial effect" (*United States v. Pepe*, 895 F.3d 679, 686 (9th Cir. 2018)). This construction would also disregard the *Medrano* court's admonishment that "RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose." *Medrano*, 704 F.3d at 665-666. Put bluntly, why would Congress and the CFPB go through the effort of drafting and enacting Dodd-Frank and Regulation X if those new provisions of law did *nothing* to expand the scope of RESPA? *See*, CFPB Amicus Brief, p. 25 (noting that "Congress added this requirement [through] Dodd-Frank" to expand Servicers' duties).

In sum, a Servicer's failure to respond to an NOE is a violation of 12 U.S.C. § 2605(k)(1) *regardless* of whether that NOE constitutes a QWR related to servicing within the purview of 12 U.S.C. § 2605(e).[5] Any other reading of 12 U.S.C. § 2605(k)(1) would contravene its plain language, the CFPB's official commentary, and the congressional intent, all of which make clear that 12 U.S.C. § 2605(k)(1)(C) and (E)—as implemented through 12 C.F.R. § 1024.35—*expand* the scope of Servicers' duties in responding to NOEs beyond the scope of Servicers' duties in responding to QWRs asserting errors that relate to servicing. Therefore, the

---

[5] Of course, where an NOE is *also* a QWR related to servicing, a Servicer's failure to respond is a violation of 12 U.S.C. § 2605(e), and is enforceable through that provision of RESPA as well. *See, e.g.*, *Medina v. Wells Fargo Bank*, 2019 WL 6140481, at *4 (C.D. Cal. 2019). But, such a violation would be *in addition to* a violation of 12 U.S.C. § 2605(k)(1).

16

Magistrate's application of 12 U.S.C. § 2605(e)'s strict "related to servicing" requirement to Plaintiffs' NOEs was in error.

### b. Requests for Information Pursuant to 12 C.F.R. § 1024.36.

An RFI is a "written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a). 12 C.F.R. § 1024.36 "implements Section 6(k)(1)(D) of RESPA," and was promulgated pursuant to the CFPB's authority under, *inter alia*, 12 U.S.C. § 2605(k)(1)(E). 78 Fed. Reg. 10753. As such, a violation of 12 C.F.R. § 1024.36 is a violation of 12 U.S.C. § 2605(k)(1)(D) and (E), and is enforceable through those provisions of RESPA.

Like NOEs, RFIs are *not* required to relate to servicing in the same way as QWRs submitted pursuant to 12 U.S.C. § 2605(e) in order to trigger a Servicer's duty to respond under 12 C.F.R. § 1024.36. *E.g.*, *Tanasi v. CitiMortgage, Inc.*, 257 F.Supp.3d 232, 266 (D. Conn. 2017) ("A servicer's obligations to respond to RFIs are broader than its obligations under RESPA to respond to QWRs, in that a RFI does not need to relate to 'servicing.'"); *Weiss v. Wells Fargo Bank, N.A.*, 2020 WL 469615, at *3 (N.D. Ill. 2020) ("Unlike a QWR, the only limitations on an RFI are that it cannot request information that is duplicative, confidential, proprietary,

17

privileged, irrelevant, overbroad, or unduly burdensome, and that the RFI cannot be untimely."); *Pollack v. Seterus, Inc.*, 2017 WL 6343676, at *2-3 (S.D. Fla. 2017). Indeed, as made clear in the Regulation X Commentary, 12 C.F.R. § 1024.36 requires that "servicers respond to *an expanded universe of information requests, including requests for information that do not specifically relate to 'servicing' as defined in RESPA*," and thus, "*does not limit [RFIs] to those related to servicing*." 78 Fed. Reg. 10761 (emphasis added).

Ignoring this precedent and the CFPB's own commentary regarding the scope of 12 C.F.R. § 1024.36, the Magistrate myopically focused on a single sentence of 12 C.F.R. § 1024.36(a)—which states that "a qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section…"—and erroneously applied 12 U.S.C. § 2605(e)'s strict "related to servicing" requirement to Plaintiffs' RFIs. ER-012. However, as explained below, this sentence of 12 C.F.R. § 1024.36(a) does not mean that *only* QWRs which relate to servicing are RFIs (as the Magistrate held), but instead means that QWRs which relate to servicing are *one type* of RFI.

In short, the relationship between QWRs relating to servicing, RFIs, and NOEs is similar to the relationship between squares and rectangles—every QWR related to servicing is either an RFI or and NOE, but not every RFI or NOE is a QWR related to servicing. This is made clear in the Regulation X Commentary,

18

wherein the CFPB states that "a qualified written request is just **one form** that a written notice of error or information request may take" and that "the error resolution and information request requirements in §§ 1024.35 and 1024.36 apply as set forth in those sections **irrespective of whether the servicer receives a qualified written request**." 78 Fed. Reg. 10888 (emphasis added). As such, the sentence of 12 C.F.R. § 1024.36(a) upon which the Magistrate relied simply establishes that a QWR requesting information related to servicing is *sufficient* to constitute an RFI, but it does not mean that it is *necessary* for an RFI to be a QWR requesting information related to servicing to trigger a Servicer's duties under 12 C.F.R. § 1024.36.

The Regulation X Commentary also contains a lengthy discussion regarding *why* the CFPB included the phrase upon which the Magistrate focused within the text of 12 C.F.R. § 1024.36(a). 78 Fed. Reg. 10753. In that discussion, the CFPB begins by noting that 12 C.F.R. § 1024.36 "*dispensed with technicalities about whether an [RFI] constituted a valid [QWR]*," indicating that the CFPB viewed, and continues to view, 12 C.F.R. § 1024.36 as *extending* Servicers' legal obligations under 12 U.S.C. § 2605(e)(2) to a *broader* range of requests regardless of whether they strictly relate to servicing. 78 Fed. Reg. 10753 (emphasis added). Nevertheless, to make clear that "Servicer obligations applicable to [QWRs] that [related to servicing] were the same as," and subsumed within, the "requirements applicable to [RFIs] under § 1024.36(a)," the CFPB included language stating that QWRs that

19

request information related to servicing are a *type* of RFI. *Id.* In sum, the language upon which the Magistrate relied was merely intended to establish that 12 C.F.R. § 1024.36's "requirements are *also* applicable to [QWRs]" that relate to servicing, and *not* that those requirements are *only* applicable to such QWRs. *Id.* (emphasis added).

Consistent with the Regulation X Commentary, courts across the country have noted that QWRs relating to servicing constitute one subset of RFIs and NOEs, but are not the only form that RFIs and NOEs may take. *E.g.*, *Messina*, 210 F.Supp.3d at 1007 ("While there is significant overlap between QWRs and notices of errors and requests for information, the terms are not synonymous."); *Weiss*, 2020 WL 469615 at *2 (N.D. Ill. 2020); *Pollack*, 2017 WL 6343676 at *3. As a result, these courts have held that "the scope of § 1024.36(a)…is not limited to requests for information relating to the *servicing* of a loan. Rather, § 1024.36(a) provides that a qualified written request [relating to servicing] is merely *one type* of covered written request for information." *E.g.*, *Joussett v. Bank of Am., N.A.*, 2016 WL 5848845, at *3 (E.D. Pa. 2016) (emphasis in original); *Cole v. JPMorgan Chase Bank, N.A.*, 2016 WL 4491731, at *7 (S.D. Ohio 2016); *Pollack*, 2017 WL 6343676 at *2-3.

Finally, for the same reasons discussed in Section I-B-1-a, *supra*, if 12 U.S.C. § 2605(e)'s strict "related to servicing" requirement applied to *all* RFIs, then RFIs and QWRs requesting information related to servicing would be one in the same. But, Servicers were *already* required to respond to QWRs requesting information

20

that related to servicing prior to the enactment of Dodd-Frank and Regulation X. Thus, such a reading of 12 U.S.C. § 2605 would render 12 U.S.C. § 2605(k)(1) (as implemented by Regulation X) entirely meaningless, in violation of the well-settled principles of statutory interpretation (*E.g.*, *Stand Up for California!*, 959 F.3d at 1159; *Pepe*, 895 F.3d at 686), and in contravention of RESPA's "remedial purpose" (*Medrano*, 704 F.3d at 665-666 (citations omitted)).

In sum, a violation of 12 C.F.R. § 1024.36 is a violation of 12 U.S.C. § 2605(k)(1)(E) even where 12 U.S.C. § 2605(e) is not implicated—*i.e.*, where an RFI is *not* a QWR related to servicing.[6] Therefore, the Magistrate's application of 12 U.S.C. § 2605(e)'s strict "related to servicing" requirement to Plaintiffs' RFIs was in error.

### c. Ownership Inquiries Pursuant to 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1)(D).

Although 12 C.F.R. § 1024.36 requires Servicers to respond to most RFIs within 30 days, 12 C.F.R. § 1024.36(d)(2)(i)(A) imposes a shorter 10-day response window with respect to RFIs seeking "the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan" ("Ownership Inquiries"). This more stringent timeframe with respect to Ownership Inquiries

---

[6] Of course, where an RFI is *also* a QWR related to servicing, a Servicer's failure to respond is a violation of 12 U.S.C. § 2605(e), and is enforceable through that provision of RESPA as well. *E.g.*, *Diffely*, 2018 WL 1737780 at *7.

21

implements 12 U.S.C. § 2605(k)(1)(D), which similarly requires Servicers "to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan."

As with all other RFIs and NOEs, a Servicer's failure to respond to an Ownership Inquiry is enforceable through 12 U.S.C. § 2605(k)(1)(E)—which is generally applicable to all Regulation X provisions (12 C.F.R. § 1024.1). However, because a violation of 12 C.F.R. § 1024.36(d)(2)(i)(A) is *also* a violation of 12 U.S.C. § 2605(k)(1)(D), a Servicer's failure to timely respond to an Ownership Inquiry is *also* enforceable through 12 U.S.C. § 2605(k)(1)(D).

The Magistrate held that Defendant had no obligation to respond to Plaintiffs' Ownership Inquiries because they requested information "pertain[ing] to [their] challenge[s to] foreclosure and the validity of [their] loans[s], not to servicing." ER-017-018. This conclusion was in error, as the Magistrate's application of 12 U.S.C. § 2605(e)'s strict "related to servicing" requirement to Plaintiffs' Ownership Inquiries contravened the plain language of 12 U.S.C. § 2605(k)(1)(D).

First, a Servicer's duty to respond to an Ownership Inquiry is governed by an entirely different provision of RESPA—12 U.S.C. § 2605(k)(1)(D)—than its duty to respond to a QWR related to servicing—12 U.S.C. § 2605(e). Unlike 12 U.S.C. § 2605(e)—which requires a QWR to be related to servicing in order to trigger a

Servicer's duty to respond—12 U.S.C. § 2605(k)(1)(D) does not contain any language stating that an Ownership Inquiry must relate to servicing in order to trigger a Servicer's duty to respond. *Compare*, 12 U.S.C. § 2605(k)(1)(D) (devoid of any reference to a relationship to servicing) *with* 12 U.S.C. § 2605(e)(1)(A) (referring to QWRs "relating to the servicing of [a] loan"). As such, 12 U.S.C. § 2605(e)'s "related to servicing" requirement is wholly inapplicable to Ownership Inquiries.

Second, prior to the enactment of Dodd-Frank and the promulgation of Regulation X, courts—like the Magistrate in this case—consistently held that Ownership Inquiries categorically do *not* relate to servicing. *See, e.g.*, *Tamburri v. Suntrust Mortg., Inc.*, 875 F.Supp.2d 1009, 1014 (N.D. Cal. 2012); *Obot v. Wells Fargo Bank, N.A.*, 2011 WL 5243773, at *2 (N.D. Cal. 2011) (collecting cases). Since, according to these authorities, Ownership Inquiries categorically do not relate to "servicing"—as that term is defined by a 12 U.S.C. § 2605(i)(3)—a Servicer has no obligation under 12 U.S.C. § 2605(e) to respond to an Ownership Inquiry.

Yet, 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d)(2)(i)(A) expressly require Servicers to respond to Ownership Inquiries. This further demonstrates that Dodd-Frank and Regulation X were intended to *expand* the scope of RESPA to other types of Borrower Inquiries—such as Ownership Inquiries—which are *not* required to relate to servicing.

23

However, if this Court were to determine that, even after the enactment of Dodd-Frank and Regulation X, 12 U.S.C. § 2605(e) is still the *exclusive* provision of RESPA that governs Borrower Inquiries, it would mean that Servicers continue to have no duty to respond to Ownership Inquiries, since—at least according to the bulk of pre-Dodd-Frank case law—Ownership Inquiries categorically do *not* relate to servicing, and thus, cannot be enforced through 12 U.S.C. § 2605(e). Such a construction of RESPA would impermissibly render 12 U.S.C. § 2605(k)(1)(D) and (E)—and by extension, all of the other expansions to RESPA effectuated by Dodd-Frank and Regulation X—entirely meaningless, as it would permit Servicers to ignore Ownership Inquiries despite the fact that 12 U.S.C. § 2605(k)(1)(D) and (E)—as implemented through 12 C.F.R. § 1024.36(d)(2)(i)(A)—explicitly require Servicers to respond to Ownership Inquiries within 10 days. *E.g.*, *Stand Up for California!*, 959 F.3d at 1159; *Pepe*, 895 F.3d at 686. Therefore, the proper conclusion would be that the provisions of 12 U.S.C. § 2605(k)(1) are *independently enforceable*, irrespective of whether a violation of 12 U.S.C. § 2605(e) is at issue.

Third, the fact that 12 C.F.R. § 1024.36 specifically identifies Ownership Inquiries as a type of RFI, even though—according to pre-Dodd-Frank case law—Ownership Inquiries are *not* QWRs related to servicing, makes clear that Ownership Inquiries—and *all* other types of RFIs—need not constitute QWRs related to servicing in order to trigger Servicers' duties to respond in accordance with 12

24

C.F.R. § 1024.36.  This further supports the assertion that 12 C.F.R. § 1024.36 is *broader* in scope than 12 U.S.C. § 2605(e), and therefore, that 12 U.S.C. § 2605(k)(1) and Regulation X impose *additional* duties upon Servicers beyond those imposed by 12 U.S.C. § 2605(e).  As such, a Servicer can violate RESPA and Regulation X with respect to Ownership Inquiries, as well as all other types of Borrower Inquiries contemplated by Regulation X, even where a QWR related to servicing is not involved.

In sum, a Servicer's failure to respond to an Ownership Inquiry is a violation of 12 U.S.C. § 2605(k)(1), which stands independently from any violation of 12 U.S.C. § 2605(e).  Therefore, Ownership Inquiries do not need to relate to servicing to be actionable.

Finally, in the alternative to the foregoing, even if this Court concludes that 12 U.S.C. § 2605(e)'s related to servicing requirement *does* apply to Ownership Inquiries, it should hold that Ownership Inquiries do, in fact, relate to servicing, and reject lower courts' holdings to the contrary.  At its core, an Ownership Inquiry seeks to identify upon whose behalf a Servicer is "receiving any scheduled periodic payments from [the] borrower," and to whom the Servicer is "making the payments of principal and interest…with respect to the amounts received from the borrower as[] required pursuant to the terms of the loan."  *See*, 12 U.S.C. § 2605(i)(3).

Accordingly, Ownership Inquiries *are* QWRs related to servicing, and thus, trigger Servicers' duties under 12 U.S.C. § 2605(e).

Moreover, although prior to Dodd-Frank, courts held that Ownership Inquiries categorically do not relate to servicing (*See, e.g.*, *Tamburri*, 875 F.Supp.2d at 1014), courts considering the issue after the enactment of Dodd-Frank and Regulation X have reached a different conclusion (*See, e.g.*, *Watson v. Bank of Am., N.A.*, 2016 WL 3552061, at *8 (S.D. Cal. 2016) ("*Watson I*"); *Watson v. Bank of Am., N.A.*, 2016 WL 6581846, at *11-12 (S.D. Cal. Nov. 7, 2016) ("*Watson II*"). For example, in *Watson I*, despite—incorrectly, for the reasons stated above—applying the "related to servicing" requirement to Ownership Inquiries, the court essentially held that because 12 U.S.C. § 2605(k)(1)(D) requires *Servicers* to respond to Ownership Inquiries, Ownership Inquiries *must* be related to servicing, thus triggering Servicers' duties under 12 U.S.C. § 2605(e)(2). *Watson I*, 2016 WL 3552061 at *8; *see also*, *Watson II*, 2016 WL 6581846 at *8, 12 (noting its "prior ruling that information related to the owner of the loan is a proper subject matter in a QWR" and holding that "information such as the name and address of the owner or assignee of the loan, the full name and address of the master servicer for the loan, the full name and address of the current servicer for the loan pertain to servicing of the loan").

26

As demonstrated by the *Watson* court's circuitous reasoning on this point, there is an inherent tension between applying 12 U.S.C. § 2605(e)'s related to servicing requirement to *all* types of Borrower Inquiries—including those that are governed by 12 U.S.C. § 2605(k)(1), such as Ownership Inquiries—while still attempting to give effect to 12 U.S.C. § 2605(k)(1). While the *Watson* court was able to strike this balance with respect to Ownership Inquiries—likely because the legal implications of 12 U.S.C. § 2605(k)(1)(D), unlike other provisions of 12 U.S.C. § 2605(k)(1), are so clear—it will be significantly more difficult for courts to strike this balance with respect to other types of Borrower Inquiries, since, as already explained, it is nearly impossible to fully give effect to Regulation X, 12 U.S.C. § 2605(k)(1)(C) and 12 U.S.C. § 2605(k)(1)(E) if 12 U.S.C. § 2605(e)'s "related to servicing" requirement applies to all types of Borrower Inquiries.

The most straightforward solution to this problem, of course, would be to hold that, because violations of 12 U.S.C. § 2605(k)(1) are independently enforceable, Borrower Inquiries governed by 12 U.S.C. § 2605(k)(1) need not relate to servicing, as set forth above. But, to the extent that this Court applies 12 U.S.C. § 2605(e)'s "related to servicing" requirement to all types of Borrower Inquiries, it should follow the holding in *Watson* and rule that, at the very least, Ownership Inquiries *are* QWRs that relate to servicing. Either way, the Magistrate's determination that Defendant

had no obligation to respond to Plaintiffs' Ownership Inquiries because they did not relate to servicing was incorrect.

### 2. Borrower Inquiries Under Regulation Z.

While TILA and its implementing regulations (known as "Regulation Z") generally pertain to mortgage loan creditors—as opposed to Servicers—certain TILA and Regulation Z provisions impose requirements upon Servicers. Even to the extent that a Servicer's failure to comply with its obligations under TILA and Regulation Z does not give rise to a violation of RESPA, such a failure *does* give rise to grounds to submit an NOE, pursuant to 12 C.F.R. § 1024.35(b)(6) or (11). *See*, Sections I-B-2-a and I-C, *infra*. As such, an NOE based on a Servicer's failure to comply with its obligations under TILA and Regulation Z, like any other type of NOE, triggers the Servicer's RESPA obligations. *See*, Section I-B-1-a, *supra*.

### a. Payoff Requests and NOEs Pursuant to 12 C.F.R. § 1024.35(b)(6).

15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) require Servicers to "send an accurate payoff balance within a reasonable time…after the receipt of a written request for such balance from or on behalf of the borrower" ("Payoff Request"). Although a Servicer's obligation to respond to a Payoff Request arises under TILA and Regulation Z, some courts have held that an inquiry regarding "the amount of debt currently owed on [a] loan" seeks "servicing related information." *E.g.*, *Diunugala v. JP Morgan Chase Bank, N.A.*, 81 F.Supp.3d 969, 982 (S.D. Cal. 2015).

28

These courts were correct because a Payoff Request can be used to identify how much money a Servicer will ultimately be "receiving [through] scheduled periodic payments from a borrower pursuant to the terms of any loan," or to verify that a Servicer is properly "making the payments of principal and interest…with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *See*, 12 U.S.C. § 2605(i)(3). Therefore, a Payoff Request is a QWR that relates to servicing, and triggers a Servicer's duty to respond pursuant to 12 U.S.C. § 2605(e)(2).

Even to the extent that this Court disagrees and holds that Payoff Requests, in themselves, do not trigger Servicers' duties under RESPA, Regulation X—which implements RESPA—expressly permits a borrower to submit an NOE if a Servicer "fail[s] to provide an accurate payoff balance" in response to a Payoff Request. 12 C.F.R. § 1024.35(b)(6). The Magistrate—myopically focusing on the word "accurate" within the text of 12 C.F.R. § 1024.35(b)(6)—concluded that 12 C.F.R. § 1024.35(b)(6) only applies where a Servicer provides an *inaccurate* payoff balance, and does not apply where a Servicer *fails* to provide a payoff balance entirely. ER-018. However, this conclusion is belied by the Regulation X Commentary, where the CFPB makes clear that 12 C.F.R. § 1024.35(b)(6) was promulgated precisely *because* Servicers' historic "fail[ure], or refus[al], to provide payoff statements to certain borrowers" had a "perverse effect" on borrowers. 78

Fed. Reg. 10742. Accordingly, Servicers, at the very least, have an obligation under RESPA and Regulation X to respond to NOEs that are based on the Servicers' prior failures to respond to Payoff Requests. 12 C.F.R. § 1024.35(b)(6).

As noted above, a Servicer's failure to respond to *any* NOE is a violation of 12 C.F.R. § 1024.35(e), and a violation of 12 C.F.R. § 1024.35 is, in turn, a violation of 12 U.S.C. § 2605(k)(1)(C) and (E). *See*, Section 1-B-1-b, *supra*. Thus, a Servicer's failure to respond to an NOE concerning its underlying failure to respond to a Payoff Request is enforceable through those provisions of RESPA.

### b. Servicer Contact Information Requests and NOEs Pursuant to 12 C.F.R. § 1024.35(b)(11).

15 U.S.C. § 1641(f)(2) requires Servicers, "upon written request," to provide borrowers "with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation" ("Servicer Contact Information Request"). While the initial obligation to respond to a Servicer Contact Information Request arises under TILA, courts have held that "information such as…the full name and address of the master servicer for the loan…pertain to servicing of [a] loan and state a claim under 12 C.F.R. § 1024.36" and 12 U.S.C. § 2605(e)(2). *See, e.g.*, *Watson II*, 2016 WL 6581846 at *12; *Watson I*, 2016 WL 3552061 at *8.

The *Watson* court's conclusion on this point makes sense, given that an inquiry into *who* is performing an activity *is* an inquiry regarding the activity itself. Indeed, it would be absurd to conclude that an inquiry into what teams were playing

30

in the Super Bowl does not relate to sports, or that a question about which actors were featured in a particular film did not relate to cinema. The same is true here; since a Servicer Contact Information Request, by definition, seeks the identity of who is acting as a Servicer, it certainly relates to servicing. Accordingly, Servicer Contact Information Requests are QWRs that relate to servicing, and by extension, are RFIs. *Id.*; 12 C.F.R. § 1024.36(a) (stating that "a [QWR] that requests information relating to the servicing of the mortgage loan is [an RFI] for purposes of this section").

Since Servicer Contact Information Requests are QWRs related to servicing, and are RFIs, a Servicer's failure to respond to a Servicer Contact Information Request violates 12 C.F.R. § 1024.36, 12 U.S.C. § 2605(k)(1)(E), *and* 12 U.S.C. § 2605(e)(2). However, even if the Court disagrees on this point, a Servicer's failure to respond to *any type* of Borrower Inquiry—including a Servicer Contact Information Request—is an error "relating to the servicing of a borrower's mortgage loan," as that phrase is used within the context of 12 C.F.R. § 1024.35(b)(11). *See*, Sections I-C and II-F, *infra*. Therefore, a Servicer's failure to respond to a Servicer Contact Information Request is still a ground upon which an NOE may be premised, pursuant to 12 C.F.R. § 1024.35's "catch-all" provision.

Here, however, the Magistrate held that neither Plaintiffs' Servicer Contact Information Requests, nor Plaintiffs' NOEs based on Defendant's failures to respond

31

to those Servicer Contact Information Requests, were related to servicing, and thus, Defendant had no duty to respond to them. However, as just explained, Defendant had a duty to respond to *all* of these Borrower Inquiries. Or, at the very least, Defendant had a duty to respond to Plaintiffs' NOEs arising from Defendant's failures to respond to Plaintiffs' Servicer Contact Information Requests. Therefore, the Magistrate's conclusion on this point was also in error.

### C. The Scope of 12 C.F.R. § 1026.35(b)(11)'s "Catch-All" Provision.

As explained in Section I-B-1-a, *supra*, Servicers' duties in responding to NOEs in accordance with 12 C.F.R. § 1024.35—and, by extension, 12 U.S.C. § 2605(k)(1)(C)—are significantly *broader* than Servicers' duties in responding to QWRs that assert errors related to servicing in accordance with 12 U.S.C. § 2605(e)(2). For one, 12 C.F.R. § 1024.35(b)(1)-(10) articulates several specific types of errors that can be raised through NOEs, even though those errors do not strictly relate to "servicing," as that term is defined by 12 U.S.C. § 2605(i)(3). *Compare*, *Brothers*, 2012 WL 4471590 at *3 (pre-Dodd-Frank case holding that errors related to the improper initiation of foreclosure proceedings do not relate to servicing) *with* 12 C.F.R. § 1024.35(b)(9) (permitting borrowers to submit NOEs based on the improper initiation of foreclosure proceedings).

In addition to the errors specifically articulated by 12 C.F.R. § 1024.35(b)(1)-(10), 12 C.F.R. § 1024.35(b)(11)—which is commonly referred to as the "catch-all"

32

provision—permits borrowers to submit NOEs based upon "any other error relating to the servicing of a borrower's mortgage loan."  Importantly, although 12 C.F.R. § 1024.35(b)(11) and 12 U.S.C. § 2605(e)(1)(A) both pertain to Borrower Inquiries asserting errors "relating to the servicing" of a loan, that phrase, as used within the context of 12 C.F.R. § 1024.35(b)(11) is meant to encompass a significantly *broader* range of errors, as explained below.

First, as explained by the CFPB in briefing before the Second Circuit in *Naimoli*, "the breadth of the catch-all reflects the scope of the statutory provision that the regulation implements."  *See*, CFPB Amicus Brief, p. 25.  That statutory provision is 12 U.S.C. § 2605(k)(1)(C), which requires Servicers to "take timely action to respond to a borrower's requests to correct errors relating to…standard servicer's duties."  Accordingly, for purposes of 12 C.F.R. § 1024.35(b)(11), any error in the performance of a *standard servicer's duty* is an error "relating to the servicing of a borrower's mortgage loan."  *St. Claire*, 2018 WL 4850127 at *5; CFPB Amicus Brief, p. 25.

As noted above, the CFPB "believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business," and include "duties that are defined as 'servicing' by [12 U.S.C. § 2605(i)(3)]", "as well as duties customarily undertaken by Servicers…in connection with the servicing of a mortgage loan."  78 Fed. Reg. 10739.   Moreover, it is common knowledge that

33

"standard servicer's duties" go "well beyond accepting and making payments." *In re Coppola*, 596 B.R. 140, 154 (Bankr. D.N.J. 2018); *St. Claire*, 2018 WL 4850127 at \*5; *see also*, *Malifrando v. Real Time Resolutions, Inc.*, 2016 WL 6955050, at \*6-7 (E.D. Cal. 2016) (noting that the word "servicing," as used in Regulation X, "connote[s] something more than an accounting statement"). Therefore, the phrase "relating to the servicing" of a loan, as used in 12 C.F.R. § 1024.35(b)(11), is not constrained by 12 U.S.C. § 2605(i)(3)'s narrow definition of "servicing." *St. Claire*, 2018 WL 4850127 at \*5; CFPB Amicus Brief, p. 25.

Second, in *Naimoli*, the CFPB also noted that "under the established interpretative canons of [statutory construction], where general words follow specific words in a statutory enumeration, the general words are construed to embrace[] objects similar in nature to those objects enumerated by the preceding specific words." CFPB Amicus Brief, p. 24 (quoting *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 384 (2003)). As such, the CFPB took the position that "the broad reach of [the] catch-all provision is confirmed"—as opposed to limited—"by the list of specific errors that precede it." CFPB Amicus Brief, p. 24. According to the CFPB, since the errors specifically articulated by 12 C.F.R. § 1024.35(b)(1)-(10) are "not limited to errors in a servicer's receiving or making of payments"—*i.e.*, 12 C.F.R. § 1024.35(b)(1)-(10) is not limited by 12 U.S.C. § 2605(i)(3)'s narrow definition of "servicing"—12 C.F.R. §

34

1024.35(b)(11)'s "catch-all" provision should not be limited by 12 U.S.C. § 2605(i)(3) either. CFPB Amicus Brief, p. 24; *see also*, *St. Claire*, 2018 WL 4850127 at *6-7 (holding that because "the CFPB specifically considered [the types of errors identified by 12 C.F.R. § 1024.35(b)(1)-(10) to be] 'related' to servicing when it promulgated" 12 C.F.R. § 1024.35(b), all similar errors "are 'related' to servicing" for purposes of the "catch-all" provision).

Finally, even to the extent that the term "servicing" as used in 12 C.F.R. § 1024.35(b)(11) is interpreted coextensively with 12 U.S.C. § 2605(i)(3)'s definition of that term, the Court should depart from its holding in *Medrano* and follow the Second Circuit's holding in *Naimoli*. *Naimoli*, 22 F.4th at 383-84 (holding that because "both 'any' and 'relating to' are capacious terms…any error that has some connection with or pertains to loan servicing is covered" by the catch-all provision). Such a result would be warranted given that *Medrano* was decided prior to the enactment and implementation of Dodd-Frank and Regulation X, and thus, the *Medrano* court was not tasked with determining to what extent 12 U.S.C. § 2605(k)(1) and Regulation X *enlarged* Servicers' duties to respond to Borrower Inquiries. In addition, as noted above, extending the holding in *Medrano* to Borrower Inquiries governed by 12 U.S.C. § 2605(k)(1) and Regulation X would render those statutory and regulatory provisions almost completely inert. Therefore, the Court should hold that Servicers are required to respond to NOEs that assert

35

errors in the performance of duties imposed by RESPA because, after all, those duties are all standard servicer's duties.[7]

## II.  PLAINTIFFS' BORROWER INQUIRIES ARE ACTIONABLE.

As explained below, the foregoing provisions of RESPA and Regulation X required Defendant to respond to the majority of Plaintiffs' Borrower Inquiries.[8] Therefore, the Magistrate's holding that Defendant did not have an obligation to respond to Plaintiffs' Borrower Inquiries was incorrect.

### A.  Defendant Was Required to Respond to McCoy's Inquiry #1 and McCoy's NOE #2.

McCoy's Inquiry #1 was a Payoff Request submitted pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).  ER-045-046; Section I-B-2-a, *supra*.  After Defendant did not respond to McCoy's Inquiry #1 *at all* (ER-033), McCoy submitted McCoy's NOE #2, pursuant to 12 C.F.R. § 1024.35(b)(6).  ER-034, ER-065-071. In response to McCoy's NOE #2, Defendant sent McCoy an Active Litigation Letter, and thus, Defendant failed to correct (or even address) the error asserted in McCoy's

---

[7] Importantly, the Court would not be required to overrule *Medrano* to reach this conclusion; it would merely have to conclude that the *Medrano* court's interpretation of 12 U.S.C. § 2605(e)'s "related to servicing" requirement is inapplicable to NOEs, which are governed by an entirely different provision of RESPA (12 U.S.C. § 2605(k)(1)(C))—which has been interpreted differently by the CFPB through 12 C.F.R. § 1024.35.

[8] For consistency, Plaintiffs will refer to their various Borrower Inquiries using the labels assigned to them in the Recommendation of Dismissal.  ER-009-011, ER-016-018.

NOE #2—*i.e.*, Defendant's prior failure to respond to McCoy's Inquiry #1.  ER-034, ER-034, ER-082.

Here, the Magistrate concluded that *neither* McCoy's Inquiry #1, *nor* McCoy's NOE #2, related to servicing, and thus, Defendant was not required to respond to either of them.  ER-016-017.  The Magistrate's holding with respect to McCoy's Inquiry #1 was in error, as Payoff Requests *do* relate to servicing.  *See*, Section I-B-2-a, *supra* (discussing 12 U.S.C. § 2605(i)(3) and citing *Diunugala*, 81 F.Supp.3d at 982).  But, even if Defendant did not have a duty to respond to McCoy's Inquiry #1, Defendant did have a duty to respond to McCoy's NOE #2.  First, as set forth in Sections I-B-1-a and I-C, *supra*, an NOE does *not* need to relate to servicing in order to trigger a Servicer's duty to respond.  Second, 12 C.F.R. § 1024.35(b)(6) expressly requires Servicers to respond to subsequent NOEs based on the Servicers' prior failures to respond to Payoff Requests.  Therefore, even if the Magistrate was correct that Defendant had no duty under RESPA to respond to McCoy's Inquiry #1, the Magistrate was incorrect to conclude that Defendant had no duty to respond to McCoy's NOE #2.

The Magistrate also concluded that Defendant's failure to respond to McCoy's Inquiry #1 did not give rise to grounds to submit an NOE pursuant to 12 C.F.R. § 1024.35(b)(6) because (i) 12 C.F.R. § 1026.36(c)(3) does not provide for a specific timeframe within which a Servicer must respond to a Payoff Request when

a borrower is in foreclosure, and (ii) 12 C.F.R. § 1024.35(b)(6) only provides grounds to submit an NOE if a Servicer fails to respond to a Payoff Request in accordance with 12 C.F.R. § 1026.36(c)(3). ER-018. To be sure, when a borrower is in foreclosure, and a Servicer "is not able to provide [a payoff] statement within seven business days," 12 C.F.R. § 1026.36(c)(3) only requires a Servicer to respond to a Payoff Request "within a reasonable time." However, there is no indication in the record that Defendant—as one of the nation's largest and most sophisticated Servicers—was unable to do so within seven business, and, in any event, McCoy's NOE #2 was sent over a *month* after McCoy's Inquiry #1, which is unreasonable under the circumstances (and in light of the "usual" seven day time limit).

Moreover, if Defendant required additional time to respond to McCoy's Inquiry #1, it could have told him so, either in response to McCoy's Inquiry #1 directly, or after it received McCoy's NOE #2. Permitting Defendant to ignore those Borrower Inquiries simply because McCoy's property was being foreclosed upon—*i.e.*, a circumstance where a borrower's knowledge of the full balance of a loan is particularly important—would frustrate the entire purpose of 12 C.F.R. § 1024.35(b)(6). 78 Fed. Reg. 10742 (noting that "a payoff statement is necessary any time a borrower repays a mortgage loan," particularly when a borrower seeks to "pay in full [his] mortgage loan obligations," such that the failure to provide a payoff statement "imped[es] a borrower's ability to pay a mortgage loan obligation in full").

38

As such, Defendant had a duty to respond to McCoy's NOE #2 pursuant to 12 C.F.R. § 1024.35(b)(6), and the Magistrate's holding to the contrary was in error.

**B. Defendant Was Required to Respond to McCoy's Inquiry #2 and Olivera's Inquiry #2.**

McCoy's Inquiry #2 and Olivera's Inquiry #2 requested the "name, address, and appropriate contact information for" (1) the current owner(s) or assignee(s) of Plaintiffs' mortgage loans, (2) the master Servicer(s) of Plaintiffs' mortgage loans, and (3) the current Servicer(s) of Plaintiffs' mortgage loans. ER-047-049; ER-129-131. Defendant did not respond to McCoy's Inquiry #2 *at all* (ER-033), and, in response to Olivera's Inquiry #2, Defendant sent an Active Litigation Letter to Olivera (ER-133).

The Magistrate held that Defendant did not have an obligation to respond to McCoy's Inquiry #2 and Olivera's Inquiry #2 because they did not relate to servicing. ER-017-018. This conclusion was incorrect for two reasons.

First, since "information such as the name and address of the owner or assignee of the loan, the full name and address of the master servicer for the loan, and the full name and address of the current servicer for the loan pertain to servicing of the loan," McCoy's Inquiry #2 and Olivera's Inquiry #2 *were* QWRs related to servicing. *Watson II*, 2016 WL 6581846 at *12. Therefore, Defendant had a duty to respond to McCoy's Inquiry #2 and Olivera's Inquiry #2 pursuant to 12 U.S.C. § 2605(e)(2).

39

Second, even assuming, *arguendo*, that McCoy's Inquiry #2 and Olivera's Inquiry #2 did *not* relate to servicing, they nevertheless requested the name, address, and appropriate contact information for the current owner(s) or assignee(s) of Plaintiffs' mortgage loans. Therefore, McCoy's Inquiry #2 and Olivera's Inquiry #2, were, in part, Ownership Inquiries.[9] *See*, Section I-B-1-c, *supra*.

As explained in Section II-C, *infra*, to the extent that an RFI (or QWR), at least in part, seeks information to which a borrower is entitled, a Servicer must, at the very least, respond to that *portion* of the RFI (or QWR). *See, e.g.*, 12 C.F.R. § 1024.36(f)(1)(iv) (discussed *infra*); *Barbano v. JP Morgan Chase Bank, N.A.*, 2019 WL 8883344, at *4 (C.D. Cal. 2019) ("The fact that some aspect of a request is not covered by RESPA does not invalidate otherwise legitimate requests contained in the same QWR."); *Pendleton v. Wells Fargo Bank, N.A.*, 993 F.Supp.2d 1150, 1153 (C.D. Cal. 2013) (citing *Rey v. OneWest Bank, FSB*, 2013 WL 1791910, at *3 (E.D. Cal. 2013)). Moreover, since 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d)(2)(i)(A) do *not* require Ownership Inquiries to relate to servicing,

---

[9] McCoy's Inquiry #2 and Olivera's Inquiry #2 were *also*, in part, Servicer Contact Information Requests because they sought that same information with respect to the master Servicer(s) of Plaintiffs' mortgage loans. *See*, Section I-B-2-b, *supra*. Although Defendant may not have had a duty, *under RESPA*, to respond to the portions of McCoy's Inquiry #2 and Olivera's Inquiry #2 that were Servicer Contact Information Requests, Defendant's failure to respond to this aspect of McCoy's Inquiry #2 and Olivera's Inquiry #2 was grounds for Plaintiffs to submit NOEs based on that failure. *See*, Section I-C, *supra*. As explained in Section II-F, *infra*, Defendant *did* have a duty to respond to those NOEs.

Defendant had a duty to respond to McCoy's Inquiry #2 and Olivera's Inquiry #2, at least in part, *regardless* of whether they related to servicing. *See*, Section I-B-1-c, *supra*. Therefore, even if McCoy's Inquiry #2 and Olivera's Inquiry #2 did *not* relate to servicing, Defendant *still* had a duty to respond to them pursuant to 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d)(2)(i)(A).

### C. Defendant Was Required to Respond to McCoy's Inquiry #3.

McCoy's Inquiry #3 sought several pieces of information relative to his mortgage loan, and therefore, it was an RFI.[10] ER-050-052. Defendant did not respond to McCoy's Inquiry #3 *at all*. ER-033.

With respect to McCoy's Inquiry #3, the Magistrate first held that Defendant did not have a duty to respond because McCoy's Inquiry #3 did not relate to servicing. ER-017. However, because Servicers' duties under 12 C.F.R. § 1024.36 are *broader* than their duties under 12 U.S.C. § 2605(e)(2), Defendant had a duty to respond to McCoy's Inquiry #3 pursuant to 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1)(E), *regardless* of whether the information sought therein related to

---

[10] McCoy's Inquiry #3 sought information including, but not limited to, "the transactional history of his loan…the last two analyses of the escrow account of the mortgage…and[] servicing notes for the past two years." ER-017. These items are mentioned here because they did, in fact, relate to servicing, and thus, McCoy's Inquiry #3 was, at least in part, a QWR related to servicing. But, as explained below, this was not necessary to trigger Defendant's duty to respond to it.

servicing.[11]  *See*, Section I-B-1-b, *supra*. Therefore, the Magistrate's conclusion on this point was incorrect.

The Magistrate also concluded that Defendant did not have a duty to respond to McCoy's Inquiry #3 because it was overly broad.  ER-017.  However, as explained below, the overbreadth of an RFI—whether in whole, in part, or not at all—is only relevant to the issue of with *which* provision of 12 C.F.R. § 1024.36 a Servicer's response must comply; overbreadth does not excuse a Servicer from responding entirely, or responding in a manner that is inconsistent with 12 C.F.R. § 1024.36. Therefore, even assuming, *arguendo*, that the Magistrate was correct in concluding that McCoy's Inquiry #3 was overbroad, it does not necessarily follow that Defendant had no duty to respond to it.

First, regardless of whether an RFI is overbroad in whole, in part, or not at all, 12 C.F.R. § 1024.36 imposes specific requirements as to how a Servicer must respond.  For example, although a Servicer is not required to provide a *substantive* response to an RFI (or any portion thereof) that it determines is, *inter alia*, duplicative (12 C.F.R. § 1024.36(f)(1)(i)), irrelevant (12 C.F.R. § 1024.36(f)(1)(ii)), or overbroad (12 C.F.R. § 1024.36(f)(1)(iv)), it must still "notify the borrower of its determination in writing," and include in that notification the *specific* basis under 12

---

[11] To the extent that McCoy's Inquiry #3 related to servicing, in whole or in part, Defendant *also* had a duty to respond to it, in whole or in part, pursuant to 12 U.S.C. § 2605(e)(2). *E.g.*, *Barbano*, 2019 WL 8883344 at *4.

C.F.R. § 1024.36(f)(1) "upon which [it] made [that] determination" (12 C.F.R. § 1024.36(f)(2)). Additionally, if only a portion of an RFI is overbroad, a Servicer is still required to respond to the portions which are *not* overbroad. 12 C.F.R. § 1024.36(f)(1)(iv); *see also*, *Barbano*, 2019 WL 8883344 at *4. Therefore, 12 C.F.R. § 1024.36 requires Servicers to respond, in a particular way, to *all* RFIs—even RFIs that are overbroad.

Second, since 12 U.S.C. § 2605(k)(1)(E) makes it a violation of RESPA for a Servicer to "fail to comply with *any*" regulation promulgated by the CFPB to carry out RESPA, there is no statutory basis to treat a Servicer's violation of 12 C.F.R. § 1024.36(d)(1)(i)—which governs a Servicer's response when an RFI is *not* overbroad or otherwise objectionable—any differently from a Servicer's violation of 12 C.F.R. § 1024.36(f)(2)—which governs a Servicer's response when an RFI is, *inter alia*, overbroad. (emphasis added). As such, while the potential overbreadth of McCoy's Inquiry #3 may change the *nature* of his claim insofar as it affects how the sufficiency of Defendant's response thereto will be evaluated, it does not affect whether McCoy can state a claim for a violation of RESPA.

Third, although the Magistrate relied upon *Derusseau* and *Anderson* for the proposition that a Servicer has no obligation to respond to an overbroad RFI, neither case supports that conclusion. ER-017 (citing *Derusseau v. Bank of Am., NA.*, 2011 WL 5975821, at *4-5 (S.D. Cal. 2011); *Anderson v. Wells Fargo Home Mortg.*, 2017

43

WL 4181114, at *5 (E.D. Cal. 2017)).  Specifically, *Derusseau* concerned a QWR that was sent before the effective date of Regulation X, and only considered whether overbreadth excused a Servicer's duty to respond pursuant to 12 U.S.C. § 2605(e)(2). *See*, *Derusseau*, 2011 WL 5975821 at *4.  But here, since Defendant's violations of Regulation X are *independently* enforceable through 12 U.S.C. § 2605(k)(1), whether Defendant had a duty to respond to McCoy's Inquiry #3 pursuant to 12 U.S.C. § 2605(e)(2) is irrelevant; the issue is whether Defendant complied with its obligations under Regulation X.

In addition, although *Anderson* was decided after 12 C.F.R. § 1024.36(f) took effect, the defendant in that case—which, notably, was Wells Fargo—did, in fact, respond to the borrower's RFIs in compliance with 12 C.F.R. § 1024.36(f). *Anderson*, 2017 WL 4181114 at *4 (noting that the defendant provided much of the information requested, and then stated "that it was 'unable to provide any further information because your remaining requests are too broad,'" but invited the borrower to "provide [it] with more specific details about what [the borrower was] seeking," so that it could "review [the] request again").  Therefore, *Anderson* is entirely *consistent* with the discussion of 12 C.F.R. § 1024.36(f) set forth above— *i.e.*, that although 12 C.F.R. § 1024.36(f) may excuse a Servicer from providing a *substantive* response to an overbroad RFI, it still requires the Servicer to respond

44

and inform the borrower *why* a substantive response is not being provided. *Id*. Here, however, Defendant simply ignored McCoy's Inquiry #3. ER-033.

Fourth, requiring Servicers to respond to purportedly overbroad RFIs in accordance with 12 C.F.R. § 1024.36(f) is necessary to promote the purpose of that provision. In the Regulation X Commentary, the CFPB expressly rejected one commenter's suggestion that Servicers should only be required "to send a standard notice informing borrowers that the Servicer received [an RFI] and is not required to respond," without stating which of 12 C.F.R. § 1024.36(f)(1)'s enumerated exceptions it believed excuses a response. 78 Fed. Reg. 10761; 78 Fed. Reg. 10751 (reaching same conclusion regarding NOEs). The CFPB then justified its position on this issue by noting that it "believes borrowers should know the basis for the Servicer's determination" as to why it is not required to respond to an RFI because "by providing borrowers with notice of the basis for the Servicer's determination, a borrower will know the Servicer's basis and will have the opportunity to bring a legal action to challenge that determination where appropriate." 78 Fed. Reg. 10761; 78 Fed. Reg. 10751 (reaching same conclusion regarding NOEs). Although not mentioned by the CFPB, informing borrowers that their requests are overbroad also fulfills another important purpose, which is to give borrowers the opportunity to refine and resubmit their requests and ultimately obtain the information to which

45

they are entitled. *Cf. Medrano*, 704 F.3d at 665-666 (noting RESPA's remedial purpose).

Simply put, to the extent that Defendant believed McCoy's Inquiry #3 was overbroad, in whole or in part, it was obligated to send a written response to that effect, and, insofar as certain requests were not overbroad, respond to just those requests. 12 C.F.R. § 1024.36(f)(1)-(2). Yet, Defendant did neither. ER-033. Given this failure, Defendant should not be permitted to rely on the purported overbreadth of McCoy's Inquiry #3—which was raised for the first time in this litigation—as *post-hoc* rationalization for why it has no liability under RESPA. As such, with respect to McCoy's Inquiry #3, Defendant clearly violated 12 C.F.R. § 1024.36, and that violation is enforceable through 12 U.S.C. § 2605(k)(1)(E), *regardless* of whether McCoy's Inquiry #3 was overbroad.

### D. Defendant Was Required to Respond to Olivera's Inquiry #1.

Olivera's Inquiry #1 was an RFI that sought any broker's price opinions that Defendant obtained with respect to his property. ER-127-128. Defendant responded to Olivera's Inquiry #1 with an Active Litigation Letter. ER-133.

The Magistrate held that Defendant was not required to respond to Olivera's Inquiry #1 *at all* because it did not relate to servicing. ER-018. For the reasons already explained, this was in error, as 12 C.F.R. § 1024.36 required a response *irrespective* of whether the information sought by Olivera's Inquiry #1 related to

46

servicing. *See*, Section I-B-1-b, *supra*. Moreover, even assuming, *arguendo*, that Defendant was not required to provide a *substantive* response to Olivera's Inquiry #1, it was still required to respond in accordance with 12 C.F.R. § 1024.36(f)(2). *See*, Section II-C, *supra*. However, the only response that Defendant sent to Olivera was an Active Litigation Letter, which did not mention the overbreadth of Olivera's Inquiry #1—or *any* of the several other exceptions to its duty to respond enumerated by 12 C.F.R. § 1024.36(f)(1)—and was devoid of any of the information that Olivera had requested. ER-133. Therefore, Defendant's response to Olivera's Inquiry #1 was inadequate.

**E.    Defendant Was Required to Respond to McCoy's NOE #1 and McCoy's NOE #3.**

McCoy's NOE #1 implicated 12 U.S.C. § 2605(k)(1)(C) and 12 C.F.R. § 1024.35(b)(11), and asserted that Defendant committed an error in performing the standard servicer duty of responding to McCoy's Inquiry #2 and McCoy's Inquiry #3 (ER-053-064)—both of which were QWRs related to servicing, or, at the very least, RFIs (*See*, Sections II-B and II-C, *supra*)—by failing to respond to them in any way (ER-033).

McCoy's NOE #3 concerned Defendant's failure to respond to McCoy's Inquiry #2 as well, but *also* implicated 12 U.S.C. § 2605(k)(1)(D) because McCoy's Inquiry #2 was, in part, an Ownership Inquiry (*See*, Section II-B, *supra*). ER-072-

47

079.   In response to McCoy's NOE ##1-3, Defendant sent McCoy an Active Litigation Letter.  ER-082.

The Magistrate held that Defendant was not required to respond to McCoy's NOE #1 or McCoy's NOE #3 because neither "of them identif[ied] any errors in the servicing of McCoy's loan" or "pertain[ed] to the list of errors enumerated in 12 C.F.R. § 1024.35(b)."  ER-017-018.  However, as explained in Section II-F, *infra*, the failure to respond to an NOE premised upon a Servicer's prior failure to respond to a Borrower Inquiry is grounds to assert an error under 12 C.F.R. § 1024.35(b)(11).

Moreover, since Ownership Inquiries inherently seek information that relates to servicing—even as that term is narrowly defined by 12 U.S.C. § 2605(i)(3)—it would be patently absurd to conclude that a Servicer's failure to respond to an Ownership Inquiry—*i.e.*, failing to provide information that relates to servicing— does not *also* relate to servicing.  *See*, Section I-B-1-c, *supra* (citing *Watson II*, 2016 WL 6581846 at *12).  Therefore—although 12 U.S.C. § 2605(k)(1)(C) imposes a duty to respond to NOEs that is *broader* than, and *independent* of, the duty imposed by 12 U.S.C. § 2605(e)(2) to respond to QWRs related to servicing—an NOE that pertains to a Servicer's failure to respond to an Ownership Inquiry *is* a QWR that relates to servicing, and thus, triggers 12 U.S.C. § 2605(e)(2) as well.

For these reasons, the Magistrate's conclusion that Defendant was not required to respond to McCoy's NOE #1 and McCoy's NOE #3 was incorrect.

48

### F. Defendant Was Required to Respond to McCoy's NOE #4, McCoy's NOE #5, McCoy's NOE #6, and Olivera's NOE #1.

After Defendant responded to McCoy's NOE ##1-3 and Olivera's Inquiry #1 with Active Litigation Letters, McCoy and Olivera, respectively, submitted McCoy's NOE ##4-6 and Olivera's NOE #1, all of which implicated 12 U.S.C. § 2605(k)(1)(C) and 12 C.F.R. § 1024.35(b)(11). McCoy's NOE #5 and McCoy's NOE #6 asserted that, by sending an Active Litigation Letter in response to McCoy's NOE ##1-3—all of which were valid NOEs (*See*, Sections II-A and II-E, *supra*)—Defendant committed an error in performing the standard servicer duty of responding to NOEs. ER-094-096; ER-107-111. Olivera's NOE #1 made the same assertions with respect to the Active Litigation Letter that Olivera received in response to Olivera's Inquiry #1—which was an RFI (*See*, Section II-D, *supra*). ER-134-139.

McCoy's NOE #4, in contrast, asserted that Defendant committed an error in performing the standard servicer duty of responding to McCoy's Inquiry #3—which, as noted above, was a QWR related to servicing, or, at the very least, an RFI (*See*, Section II-C, *supra*).[12] ER-086-093. Nevertheless, McCoy's NOE ##4-6 and

---

[12] The difference between McCoy's NOE #1 and McCoy's NOE #4 was that McCoy's NOE #1 concerned Defendant's failure to acknowledge receipt of McCoy's Inquiry #3, whereas McCoy's NOE #4 concerned Defendant's failure to provide a substantive response to McCoy's Inquiry #3. *Compare*, ER-053-064 *with* ER-086-093.

Olivera's NOE #1 all concerned Defendant's failures to respond to their prior Borrower Inquiries.

The Magistrate held that Defendant was not required to respond to any of these NOEs because "none of them identif[ied] any errors in the servicing of" Plaintiffs' loans or "pertain[ed] to the list of errors enumerated in 12 C.F.R. § 1024.35(b)." ER-017-018. The Magistrate also noted that "an NOE cannot be used simply to assert the failure to respond to an RFI," NOE, or any other type of Borrower Inquiry. ER-013. As set forth below, these conclusions were incorrect because the failure to respond to *any type* of Borrower Inquiry *is* grounds to assert an error under 12 C.F.R. § 1024.35(b).

First, pursuant to 12 C.F.R. § 1024.35(b)(6), a Servicer's failure to respond to a Payoff Request—which is a type of Borrower Inquiry—is grounds to submit an NOE. *See*, Section I-B-2-a, *supra*. As such, 12 C.F.R. § 1024.35(b)(6) expressly refutes the proposition that an NOE can *never* be premised upon a Servicer's failure to respond to a prior Borrower Inquiry.

Second, although 12 C.F.R. § 1024.35(b) does not specifically state that NOEs can be premised upon Servicers' failures to respond to other types of Borrower Inquiries (in addition to Payoff Requests), such a failure would fall within the scope of 12 C.F.R. § 1024.35(b)'s broad "catch-all" provision—*i.e.*, 12 C.F.R. §

1024.35(b)(11).[13]  As noted above, 12 C.F.R. § 1024.35(b)(11) permits borrowers to submit NOEs in connection with any error in the performance of "standard servicer's duties."  *See*, Section I-C, *supra*.  And, to the extent that RESPA or Regulation X imposes a duty upon a Servicer to respond to a type of Borrower Inquiry, that duty is, by definition, a standard servicer's duty. Therefore, a Servicer's failure to respond to any type of Borrower Inquiry—other than a Payoff Request, which is governed by 12 C.F.R. § 1024.35(b)(6)—is an error in the performance of a standard servicer's duty, within the purview of 12 C.F.R. § 1024.35(b)(11) and 12 U.S.C. § 2605(k)(1)(C).

Third, although the Magistrate cited *Weiss* and *Smith* for the proposition that an NOE cannot be based on a prior failure to respond to a Borrower Inquiry (ER-013 (citing *Weiss*, 2020 WL 469615 at *4; *Smith v. Wells Fargo Bank, N.A.*, 2019 WL 2189285, at *5 (N.D. Ill. 2019))), other courts have held the opposite (*Nguyen v. Madison Mgmt. Services, LLC*, 2016 WL 4708535, at *2 (D. Or. 2016) (permitting causes of action pertaining to NOEs alleging errors under 12 C.F.R. § 1024.35(b)(11) for failure to respond to prior RFIs and NOEs); *Yepez*, 2019 WL

---

[13] The likely reason that 12 C.F.R. § 1024.35(b)(6) explicitly mentions a Servicer's failure to respond to a Payoff Request is because 12 C.F.R. § 1024.36(a) expressly states that a Payoff Request "need not be treated by the servicer as" an RFI.  Thus, the reasoning applied above to RFIs (and other Borrower Inquiries) would (arguably) not apply to Payoff Requests, making it necessary for the CFPB to expressly mention them in 12 C.F.R. § 1024.35(b)(6).

2644255 at *3). In justifying its determination that an NOE *can* be based upon a prior failure to respond to a Borrower Inquiry, the *Yepez* court first noted that—similar to this case—the Servicer "answered each [Borrower Inquiry] by" responding "with the same boiler plate response that it made in its previous responses," thereby frustrating the borrower's attempt to resolve the issue, and necessitating additional NOEs. *Yepez*, 2019 WL 2644255 at *3. Accordingly, the *Yepez* court continued, "while there may [have been] some duplication" of issues in the plaintiffs' NOEs, each NOE was actionable because "each [NOE] was met with the same apparent willful refusal to" comply with Regulation X. *Id.*

Fourth, if borrowers were not permitted to submit NOEs based on Servicers' prior failures to respond to Borrower Inquiries, litigation would be their only recourse in such scenarios, thus frustrating the underlying purpose of 12 C.F.R. § 1024.35(b) and 12 U.S.C. § 2605(k)(1)(C), which is to provide borrowers a mechanism that "facilitate[s] the timely correction of errors" and provides them with the opportunity to fully "consider further action as appropriate." 78 Fed. Reg. 10746. Moreover, since 12 C.F.R. § 1024.35(g)(1)(i) *already* provides an exception to Servicers' duties to substantively respond to duplicative NOEs, permitting borrowers to submit NOEs based on Servicers' prior failures to respond to Borrower Inquiries would not lead to a parade of endless NOEs; once a Servicer makes a final decision as to a particular error asserted, its duties largely cease. As such, prohibiting

52

borrowers from submitting NOEs based on Servicers' prior failures to respond to Borrower Inquiries would make it more difficult for borrowers to obtain quick and easy resolutions to their problems, while providing little benefit to Servicers. This is not to mention the potential flood of litigation that could be avoided simply through the submission of NOEs.

These final two considerations are particularly relevant here. The majority of Plaintiffs' NOEs were premised on Defendant's assertion of a baseless "active litigation" exception. Had Defendant simply performed its obligations under RESPA and Regulation X, Plaintiffs' NOEs would not have been necessary at all. Defendant was then given additional opportunities to comply with its obligations under RESPA and Regulation X, but failed to do so. Had Defendant taken any of these opportunities, Plaintiffs would have received the timely resolution that Regulation X was designed to promote, and Defendant would have escaped litigation altogether. Under these circumstances, it would be entirely inequitable to permit Defendant to escape its obligations. Therefore, the Magistrate's holding that Defendant was not required to respond to any of Plaintiffs' NOEs should be reversed.

## CONCLUSION

For the reasons set forth herein, the District Court's dismissal of Plaintiffs' Complaint should be reversed, and this matter should be remanded to the District Court for further proceedings to be held in accordance with this Court's ruling.

53

Dated: March 28, 2022              Respectfully submitted,


By: <u>/s/ Thomas A. Zimmerman, Jr.</u>
     Thomas A. Zimmerman, Jr.
     ZIMMERMAN LAW OFFICES, P.C.
     77 W. Washington Street, Suite 1220
     Chicago, IL 60602
     Telephone: (312) 440-0020
     tom@attorneyzim.com

     Marc E. Dann
     DANNLAW
     15000 Madison Avenue
     Lakewood, OH 44107
     Telephone: (216) 373-0539
     mdann@dannlaw.com
     notices@dannlaw.com

     Jeffrey A. Long
     4248 Galewood St., Suite 18
     Lake Oswego, OR 97035
     Telephone: (503) 374-9777
     jefflonglawyer@gmail.com

Attorneys for Plaintiffs-Appellants
DONALD E. MCCOY III and
MAXIMILIANO OLIVERA, individually,
and on behalf of all others similarly situated

54

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-35892

I am the attorney or self-represented party.

**This brief contains** | 12,980 | **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/Thomas A. Zimmerman, Jr.　**Date** | Mar 28, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          55          *Rev. 12/01/2018*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of March, 2022, a copy of the foregoing *Opening Brief of Appellants Donald E. McCoy III and Maximiliano Olivera*, which was filed electronically, was served upon counsel of record in this case. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Thomas A. Zimmerman, Jr.*